UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff

v.

TIMOTHY CALICUTT,

    Defendant

File No: 1:20-CR-156

Hon. Janet T. Neff
United States District Judge

## DEFENDANT'S AMENDED MEMORANDUM REGARDING SENTENCING AND MOTION FOR VARIANCE PURSUANT TO 18 U.S.C. § 3553(a)

### I. Introduction and Background

On June 10, 2021, Timothy Calicutt was convicted following a jury trial of Conspiracy to Distribute and Possess with the Intent to Distribute 50 grams or more of Methamphetamine from January 2020 through June 2020, Possession with Intent to Distribute 50 grams or more of Methamphetamine on June 25, 2020 and being a felon in possession of a firearm on June 25, 2020.

This Amended Sentencing Memorandum and Motion for Variance is submitted to correct the miscalculated offense level and guideline range submitted in the original Sentencing Memorandum. All other information remains the same.

### II. Presentence Investigation Report and Objections

Mr. Calicutt reviewed the presentence report authored by U.S. Probation Officer Jeremy Williams with his counsel. After consultation with his counsel, Mr. Calicutt maintains the following objections to the Presentence Investigation Report ("PSR"):

    A.    **The Defendant Should Only Be Held Responsible for the Quantity of Drugs Seized on June 25, 2020 (Approximately 11 pounds).**

1

The defendant maintains that he should only be held responsible for the quantity of drugs seized on June 25, 2020 (Approximately 11 pounds or 4.5 kilograms). Where uncertainty of the total drug quantity exists, Sixth Circuit case law urges underestimating drug quantity and erring on the side of caution when estimating the quantity of drugs attributable to a defendant. *United States v. Anderson*, 526 F.3d 319, 326 (6th Cir. 2017); *United States v. White*, 563 F.3d 184, 196 (6th Cir. 2009); *United States v. Davis*, 981 F.2d 906, 911 (6th Cir. 1993). The Sixth Circuit has held that "when the exact amount of drugs involved is uncertain, the court may make an estimate supported by competent evidence, but the evidence supporting the estimate must have a minimal level of reliability beyond mere allegation, and the court should err on the side of caution in making its estimate." *United States v. Sandridge*, 385 F.3d 1032, 1037 (6th Cir. 2004).

To the extent that the Government requests this Court to determine the quantity of methamphetamine (actual) based on the testimony by co-defendant Dwayne Parks, Mr. Calicutt objects to the calculated drug quantity based on Mr. Parks' unreliable statements and lack of other reliable evidence that would support Mr. Parks' general estimation that he and Mr. Calicutt were responsible for 150 to 200 pounds of methamphetamine between October 2019 and June 2020. Mr. Parks retracted his prior July 2, 2020 statement to law enforcement stating that he was responsible for distributing at least 150 pounds of methamphetamine in 2020, and admitted "that amount was grossly inflated by Mr. Parks in an effort to increase his value to the agents." (ECF No. 164, Amended Sentencing Memorandum, PageID.954-55). Mr. Parks also admitted that he only met with the Chicago based supplier on approximately 5 occasions, not 15 to 18 occasions. (*Id.* at PageID.955). Even if Mr. Parks did not retract his statement that he and Mr. Calicutt were responsible for 150 to 200 pounds of methamphetamine, this statement alone would still not elevate his statement "beyond mere allegation." Mr. Calicutt recognizes that the Court may rely

on co-conspirator statements, but where, as here, witness estimates of drug amounts are uncertain, a district court is well advised to sentence at the low end of the range to which the witness testified. *See United States v. Sampson*, 140 F.3d 585, 592 (4th Cir. 1998).

Furthermore, any statements or information provided by jailhouse informant Jervon Ward, a former cellmate of Mr. Calicutt, are unreliable and should be viewed with extreme caution. A jury is instructed to normally view testimony from inmates housed with Petitioner with some skepticism. *Fulcher v. Motley*, 444 F.3d 791, 823 (6th Cir. 2006) (citing *Zappulla v. New York*, 391 F.3d 462, 470 n.3 (2d Cir. 2004) (noting the unreliability of "jailhouse snitches")). In this case, Mr. Ward did little more than parrot the information that was already contained within the numerous incident reports provided to Mr. Calicutt as part of the discovery in this case. Mr. Ward provided no new, unique information pertaining to the drug conspiracy itself at trial that was not otherwise contained within Mr. Calicutt's discovery material. Furthermore, the testimony of Mr. Ward should be viewed with particular skepticism in light of his prior history with the United States Attorney's Office as well as with other district courts within this district. To be blunt, not only is Mr. Ward essentially a professional jailhouse informant, he has history of witness tampering in federal cases. During Mr. Ward's sentencing before Judge Quist in Case No. 1:19-cr-160, this United States Attorney's Office refused to file a 5K motion despite his cooperation in an unrelated matter due to Mr. Ward's attempted witness tampering in his own case stating the following:

> He also made several statements on jail calls, which I think is significant, because he is not necessarily aware, though perhaps he should be, that his phone calls are being monitored. He has several conversations with his girlfriend in which he initially actually tried to convince her to say that the gun in the house was hers and not his.

\*\*\*

> He also however, tried to get his girlfriend to take responsibility for one of his guns. He talked to her about how she should talk about her consent at the motion to suppress hearing. He came, as I said before, perilously close to witness tampering.

(See Exhibit 1, Sentencing Transcript, United States v. Ward, Case 1:19-cr-160, ECF 80, PAGE ID 352, 356.) It is even more significant that the aforementioned efforts occurred in anticipation of a hearing on a motion to suppress that was filed by Mr. Ward's counsel. Accordingly, any information provided by Mr. Ward should be viewed with even smore skepticism than a typical jailhouse informant since this jailhouse informant as a documented history of being dishonest in federal proceedings and trying to convince others to lie on his behalf. Accordingly, this Court should disregard any evidence provided by Mr. Ward has unreliable.

**B.  The Sentencing Enhancements under U.S.S.G. § 3B1.1 Should Not be Applied to Defendant.**

The PSR applies a four-point leadership enhancement to Mr. Calicutt for being an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. (ECF No. 148, PSR at ¶ 52, PageID.849). There is insufficient evidence to apply this enhancement to Mr. Calicutt because there was no evidence that he controlled or directed the actions of any other members of the conspiracy. Rather, the evidence suggests that while Mr. Calicutt was certainly a customer of Mr. Park's source, the deliveries and shipments were solely controlled by co-defendant Parks and his source and were in no way controlled by Calicutt.

To justify the imposition of a leadership or organizer enhancement under U.S.S.G. § 3B1.1(a), the government must show by a preponderance of the evidence that a defendant "was an organizer or leader of a criminal activity that involved five or more participants." *United States v. Salyers*, 592 F. App'x 483, 485 (6th Cir. 2015) (citing *United States v. Washington*, 715 F.3d 975, 983 (6th Cir. 2013)). Thus, there are two requirements that the government must satisfy: (1) that

4

there were five or more "participants" in the criminal activity, and (2) that defendant was the leader or organizer of those participants. *Id.* To show that a defendant was a "leader or organizer," "a defendant must have exerted control over at least one individual within a criminal organization for the enhancement of § 3B1.1 to be warranted.'" *Id.* at 484 (citations omitted). To determine whether a defendant exercised "control" sentencing courts consider the following factors:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 comment. (n.4). In *United States v. Salyers*, 592 F. App'x 483, 485 (6th Cir. 2015), the court held that the district court erred in imposing the four-level § 3B.1(a) enhancement because the evidence did not demonstrate that the defendant exercised control over any other participant where the evidence only revealed that the defendant "purchased heroin in Cincinnati, traveled back to Kentucky, and distributed it to others." *Id.* at 485. "[M]erely playing an essential role in the offense is not equivalent to exercising . . . control over other participants," which is what is required to impose an enhancement under § 3B1.1. *Id.* (quoting *United States v. Wright*, 747 F.3d 399, 412 (6th Cir. 2014)).

Similarly, here, the evidence does not establish that Mr. Calicutt controlled or directed the actions of Mr. Parks or any other participants. The evidence presented at trial indicated that Park's found his source in Chicago through a family friend and that the source in Chicago only had contact with Mr. Parks. Mr. Calicutt never had any direct contact with Mr. Parks' Chicago source and did not control or direct any of the correspondences Mr. Parks had with the Chicago source. Mr. Parks admitted that he traveled to pick up the drugs in Chicago from his Chicago source and that his Chicago source may have driven to Kalamazoo to drop the drugs off to Mr. Parks. While the

5

evidence presented at trial suggested that Mr. Park's would deliver some of the drugs to Mr. Calicutt, there was no evidence presented at trial that indicated that Mr. Calicutt could order Mr. Parks to do anything. Parks would notify Calicutt when his source was delivering drugs to the Kalamazoo area and ask if Calicutt wanted to purchase some. That is not leader/subordinate relationship but a but a buyer/seller relationship. Mr. Calicutt was not a leader; he was simply a customer of his client. He bought, received, and distributed methamphetamine. He did not control when Mr. Parks would pick up or deliver the shipments and did not control what Mr. Parks or any of the other co-defendants did with the methamphetamine they received.

To the extent the government claims that Mr. Calicutt's leadership enhancement is warranted based on Mr. Calicutt's alleged threats to Mr. Parks, the only evidence relating to any threats that Mr. Calicutt made to Mr. Parks were obtained from Mr. Ward's unreliable jailhouse statements. (ECF No. 120, Final PSR, ¶ 34 PageID. 846). For the reasons discussed above, these statements are unreliable. More importantly, Mr. Parks never testified that Mr. Calicutt threatened him and specifically stated that he "ultimately decided to proceed to trial after considering the government's position on his culpability in the case." (ECF No. 164, Parks' Amended Sentencing Memorandum, PageID.955).

Mr. Calicutt's role does not warrant a four-level leadership enhancement. Removing this four-level enhancement will reduce Mr. Calicutt's offense level from 48 to 44, which will not impact the total offense level, which would remain level 43. However, if this Court sustains both of Mr. Calicutt's objections and utilizes a 1:1 ratio as further described below, Mr. Calicutt's base offense level would be reduced to 32 and the total offense level would be 38. An offense level of 38 with a criminal history category of III would result in a guidelines range of 292 to 365 months.

C.     **Correct Offense Level and Sentencing Guideline Range**

Based upon the aforementioned objections and the variance outlined below, Mr. Calicutt submits the following:

1. Defendant is only responsible for 11 pounds or 4.5 kilograms of methamphetamine (actual);
2. Defendant is NOT a leader or organizer pursuant to U.S.S.G. § 3B1.1(a);
3. The correct total Offense Level is 43 and the correct Criminal History Category is III;
4. The correct advisory sentencing guideline range is life;
5. Based upon this Honorable Court's methamphetamine sentencing policy stated in *United States v. Saldana*, No. 1:17-cr-271-1, 2018 U.S. Dist. LEXIS 110790 (W.D. Mich. July 3, 2018), this Honorable Court should treat the methamphetamine quantity as a mixture resulting in a base offense level of 32.

### III. Application of 18 U.S.C. § 3553(a)

When sentencing a defendant who has been found guilty of a crime, courts must comply with the basic aims of sentencing set forth in 18 U.S.C. § 3553(a). *Rita v. United States,* 127 S.Ct. 2456, 2463, 168 L.Ed. 2d 203 (2007). The basic aim of sentencing is to "impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing. 18 U.S.C. § 3553(a); *United States v. Kimbrough*, 128 S.Ct. 558, 169 L.Ed. 2d 481 (2007). The goals of sentencing are "to reflect the seriousness of the offense," "to promote respect for the law," "to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," "to protect the public from further crimes of the defendant," and "to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)-(D); *Kimbrough*, 128 S.Ct. at 569. In *United States v.*

*Ferguson,* 456 F.3d 660, 665 (6th Cir. 2006), the Court held that after *United States v. Booker*, 543 U.S. 220 (2005), a judge must impose the lowest sentence that is minimally sufficient to meet those goals regardless if that sentence is probation, time served, a mandatory minimum sentence, the statutory maximum sentence, or somewhere in between.

While courts must continue to consider the sentencing guidelines, they are no longer mandatory and courts are only required to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. § 3553(a). Those factors include (a) the nature and circumstances of the offense and the history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range; (d) the need to avoid unwarranted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a). For the Court's convenience, Mr. Calicutt will enumerate these factors below.

    **A.**    **Section 3553(a)(1) looks to the nature and circumstances of the offense and the history and characteristics of the defendant.**

        *(1)*    *The nature and circumstances of the offense.*

This Honorable Court presided over a four-day jury trial in this matter. Accordingly, there is little that can be added with regards to the nature and circumstance of the offense in this sentencing memorandum.

        *(2)*    *The history and characteristics of the defendant.*

Mr. Calicutt is 51 years old. As a child and young teen, he was evaluated by the Michigan Department of Human Services and determined to be eligible for special education classed due to

emotional impairment. His childhood was tumultuous as he bounced around between various foster homes and his mother dysfunctional home from 1978 to 1987.

Mr. Calicutt considers the raising of his two sons to be his greatest accomplishment. Despite his own upbringing, he has managed to raise two male sons in a manner that has kept them in school and out of the criminal justice system. While Mr. Calicutt understands that he has fallen short in many other aspects of his life, he is proud that he has kept his sons off the streets and out of the system. He hopes for a much brighter future for both of them.

> **B. Section 3553(a)(2)(A) calls for consideration of the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

Mr. Calicutt understands the seriousness of the offense for which he has been convicted. As this offense of conviction has a ten-year mandatory minimum sentence, this Court should have no concerns that any sentence it imposes will fail in achieving this purpose of sentencing. However, imposing a life sentence for an offense that does not involve any violence or threats of violence is not just and will do little to promote respect for the law.

> **C. Section 3553(a)(2)(B) points out the need to afford adequate deterrence to criminal conduct, and § 3553(a)(2)(C) asks the courts to consider the need to protect the public from future crimes of the defendant.**

Both of these purposes are certain to be achieved by any sentence this Court imposes since the statutory minimum sentence is 10 years.

> **D. Section 3553(a)(3) directs the court to consider the kinds of sentences available.**

Under *Booker,* and with the advisory nature of the sentencing guidelines, this Court has some discretion here. The statutory sentencing range spans ten years to life. Mr. Calicutt understands that his conviction for Counts 1 and 2 require a lengthy sentence in this matter.

However, the defense submits that a life sentence is greater than necessary under the totality of the circumstances in this matter.

E. **Section 3553(a)(4) calls for consideration of the advisory guideline sentencing Range.**

While § 3553(a)(4) calls for this Court to consider the advisory guideline range, it does not mandate that it follow it. While district courts must consider the Guidelines range, they are not bound by it as it is "advisory only." *Kimbrough v. United States*, 552 U.S. 85, 91 (2007). A "policy disagreement with the Guidelines" entitles the district court to vary downward from the advisory guideline range. *Spears v. United States*, 555 U.S. 261, 263-66, 129 S. Ct. 840, 172 L. Ed. 2d 596 (2009).

As this Court is well aware, there exists a policy disagreement with the U.S.S.G. within this district and among others regarding the 10:1 mixture-to-actual methamphetamine ratio due in part to a lack of empirical evidence of its value. *See United States v. Johnson*, 812 F. App'x 329, 334 (6th Cir. 2020); *United States v. Saldana*, No. 1:17-cr-271-1, 2018 U.S. Dist. LEXIS 110790 (W.D. Mich. July 3, 2018). In *United States v. Saldana*, this Court memorialized its policy disagreement with the methamphetamine trafficking guidelines and held that its "methodology for sentencing in methamphetamine cases will be to treat all methamphetamine quantities as mixtures." *Saldana*, 2018 U.S. Dist. LEXIS 110790 at *9. Mr. Calicutt asks this Court to apply this sentencing methodology to the calculation of his sentencing guidelines. *Id.* at *7-11. As this Court pointed out, there is "no evidence of any empirical data or institutional expertise" grounding the methamphetamine trafficking guidelines, which ultimately results in equating drug purity with a greater role in the offence and extraordinarily harsh sentencing ranges. *Id.* at *7-8. Applying the 10:1 ratio here would compound the lack of empirical evidence for the purity disparity by allowing

the higher guideline provisions to apply, even if the evidence does not truly support that application. Accordingly, Mr. Calicutt respectfully requests this Court apply the 1:1 ratio here.

Should this Court apply the 1:1 ration as it did in *Saldana*, Mr. Calicutt's base offense level would be 32 based upon the previous notated objections. Such an application would result in a total adjusted offense level of 38 and a criminal history category of III resulting in an advisory guideline range of 292-365.

### IV. Conclusion

The defense submits that even this guideline range is greater than necessary to comply with the purpose 18 U.S.C. § 3553(a). Mr. Calicutt is already 51 years old. The average life expectancy of an African American male in the United States is 77.8 years. Mr. Calicut humbly request that this Court impose a sentence that provides Mr. Calicutt with at least some opportunity not to die in prison.

Dated: October 4, 2021                                          Respectfully Submitted,

s/ Michael R. Bartish
Michael R. Bartish (P65097)
Springstead & Bartish Law, PLLC
60 Monroe Center, Suite 500
Grand Rapids, Michigan 49503
(616) 458-5500
mike@sbbllaw.com

11